NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORTH AMERICAN SPECIALTY INSURANCE COMPANY,<br><br>*Plaintiff*,<br><br>v.<br><br>ARCH CONCEPT CONSTRUCTION, INC. A/K/A ARCH-CONCEPT CONSTRUCTION, INC., LAZAR REALTY LP, DUSAN LAZETIC, AND SVETLANA LAZETIC,<br><br>*Defendants*. | Civil No.: 21-287 (KSH) (CLW)<br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I.    Introduction**

Plaintiff North American Specialty Insurance Company ("NAS")[1] issued payment and performance bonds on behalf of defendant Arch Concept Construction, Inc. ("Arch") for construction projects Arch was undertaking for various public entities.  In exchange, Arch, along with defendants Lazar Realty LP, Dusan Lazetic, and Svetlana Lazetic (with Arch, "defendants" or "indemnitors"), signed an agreement to indemnify NAS for any losses the latter incurred on the bonds.  NAS paid out multiple claims under the bonds and, by way of this lawsuit, seeks to recover those losses from defendants.  Presently before the Court is NAS's motion for summary judgment.  For the reasons set forth below, that motion is granted in part and denied without prejudice in part.

---

[1] Certain of NAS's motion papers suggest that it is now known as Swiss Re Corporate Solutions America Insurance Corporation.  The docket does not reflect any request to formally change the name of the plaintiff entity and the Court will continue to refer to the plaintiff under the name it used to file the complaint and prosecute this action.

1

## II.  Background

NAS is a surety organized under the laws of Missouri and is authorized to act as a surety and execute surety bonds in the state of New Jersey. (D.E. 43-13, NAS Statement of Undisputed Material Facts ("SUMF") ¶ 1.)[2] In that role, it issued a series of bonds backing up Arch's performance and payment obligations on various construction projects. (*Id.* ¶ 11; *see also* D.E. 43-1, Aff. of Douglas Colville, Ex. 1, Bonds.) In substance, the bonds provided that in the event Arch defaulted NAS would step in to perform the work or make payments for labor, materials, or equipment pursuant to Arch's obligations under the various contracts with the public entities (*i.e.*, the obligees). (*See generally* Colville Aff., Ex. 1.)

In consideration of NAS issuing the bonds, Arch, together with the other indemnitors, executed an indemnity agreement (the "General Indemnity Agreement," or "Agreement") effective May 13, 2015, whereby they agreed to "exonerate, hold harmless and indemnify [NAS] from any and all Loss." (NAS SUMF ¶ 2; Colville Aff., Ex. 2, Agreement ¶ 2.) "Loss" is defined as:

> any liability, loss, costs, damages, attorneys' fees, consultants' fees, and other expenses, including interest, which the Surety may sustain or incur by reason of, or in consequence of, the execution of the Bonds (or any renewals, continuations or extensions). Loss includes but is not limited to the following: (a) sums paid or liabilities incurred in the settlement of claims; (b) expenses paid or incurred in connection with the investigation of any claims; (c) sums paid in attempting to procure a release from liability; (d) expenses paid or incurred in the prosecution of defense of any suits; (e) any judgments under the Bonds; (f) expenses paid or incurred in enforcing the terms of this Agreement; (g) sums or expenses paid or liabilities incurred in the performance of any Bonded contract or related obligation; and (h) expenses paid in recovering or attempting to recover losses or expenses paid or incurred. Loss expressly includes attorney fees incurred in defending claims, protecting the Surety's interests in any bankruptcy or insolvency proceeding, arranging for the Surety's performance of its obligations, evaluating, settling, and paying claims, seeking recovery under the terms of this Agreement from the Indemnitors, and pursuing the Surety's common law rights to

---

[2] The facts recited are undisputed unless otherwise noted.

2

seek recovery of losses from others, including third parties. . . .

(Agreement ¶ 2.) Various events would trigger a default under the Agreement, including, *inter alia*, a breach or default in the performance of a bonded contract, NAS's receipt of notice of a claim, breach, or default under a bonded contract, and a failure to pay for labor or materials used in carrying out a bonded contract. (*Id.* ¶ 4.) NAS retained sole discretion over the settlement of claims on the bonds it issued, and was entitled to "immediate reimbursement" for its losses:

> The Surety shall have the right to decide and determine in its sole discretion whether any claim, liability, suit or judgment made or brought against the Surety or any of the Indemnitors on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and the Surety's decision shall be final, binding and conclusive upon the Indemnitors. The Surety shall be entitled to immediate reimbursement for any and all Loss under this Agreement. The Surety shall have no obligation to tender its defense to any Indemnitor. If the Surety elects not to tender its defense to any Indemnitor, then the Indemnitors shall nevertheless remain liable to the Surety for all Loss. An itemized statement of payments made by the Surety sworn to by an officer of the Surety shall be prima facie evidence of the liability of the Indemnitors to reimburse the Surety.

(*Id.* ¶ 9.) The Agreement also allowed NAS to require that the indemnitors post collateral security with it upon its demand, which it could make in specified circumstances, including upon its receipt of a notice of claim or default. (*Id.* ¶ 3.) The Agreement further provided that the indemnitors' obligations were joint and several. (*Id.* ¶ 12.)

Relevant to the instant action, NAS issued payment and performance bonds to Arch for construction contracts the latter was performing for several public entities. (NAS SUMF ¶ 11.) These contracts included projects for school districts in Washington Township, Bound Brook, Clifton, Fair Lawn, Plainfield, and Paterson; for the North Jersey Water Supply Commission; and for the New Jersey Department of Military Affairs. (*Id.*)

Arch ultimately defaulted on numerous obligations under the contracts, and in 2017 and 2018, NAS paid out on more than two dozen claims made under the performance and payment

3

bonds. (NAS SUMF ¶¶ 12-87.) This included the settlement, paid by NAS, of a lawsuit filed by a supplier on two of the projects and, relatedly, securing a release from the supplier. (*Id.* ¶¶ 12-15.) It also included NAS's receipt of proofs of claims from multiple additional suppliers, its investigation of those claims, its settlement of the claims and accompanying payment of settlement proceeds, and its procurement of releases from those suppliers. (*Id.* ¶¶ 16-86.) According to NAS,[3] these payouts totaled nearly $2 million plus its loss adjustment expenses (including attorneys' fees), and it has recovered only a fraction of that amount. (*See id.* ¶¶ 87, 93, 94.)[4]

On January 7, 2021, NAS filed a five-count complaint against Arch and the other indemnitors, seeking contractual indemnification for the amounts it paid out under the bonds (count I) and for associated fees and expenses (count II) (*See* D.E. 1, Compl.) It also asserts claims for exoneration (count III) and subrogation (count IV). In count V, NAS asserted a claim for quia timet, seeking the deposit of collateral to secure NAS "pending the full and complete discharge of its liability under the Bonds." (*Id.* ¶ 38.)

Defendants moved to dismiss the quia timet claim, arguing that the complaint failed to plead any threat of future injury warranting the posting of collateral and that the quia timet claim was, in substance, duplicative of the indemnification and/or exoneration claims seeking

---

[3] As explained in greater detail below, the summary judgment record requires clarification of the precise amount NAS seeks to recover.
[4] Defendants purport to dispute the statement in ¶ 93, which sets forth NAS's legal and consulting fees, costs, and expenses, as violating Fed. R. Civ. P. 56(c)(1)(A), which requires a party to support its assertion that a fact is or cannot be disputed by "citing to particular parts of materials in the record." NAS's paragraph 93 does, however, cite specific paragraphs of and exhibits to the Colville and Licker affidavits. Moreover, for statements of fact it disputes, the opponent of summary judgment is required to "stat[e] each material fact in dispute and cit[e] to affidavits and other documents submitted in connection with the motion," L. Civ. R. 56.1(a), which defendants' response to ¶ 93 does not do.

4

repayment of amounts NAS had paid under the bonds. (D.E. 13.) Shortly after defendants filed their motion, the parties stipulated to the dismissal of the quia timet claim, rendering the motion moot. (D.E. 19.) Defendants then filed an answer to the remaining four counts. (D.E. 20.)

NAS has now moved for summary judgment, relying on a brief (D.E. 43-14, Moving Br.), its Rule 56.1 statement of material facts, the affidavit of NAS Vice President Douglas Colville (D.E. 43-1, Colville Aff.), and an attorney affirmation (D.E. 43-9, Licker Aff.). Although NAS nominally seeks summary judgment on "all counts" (Moving Br. 1), its arguments are devoted entirely to why it is entitled to indemnification of the amounts it paid out under the bonds, plus loss adjustment expenses—claims that are the subject of counts I and II. Its brief also includes a demand for collateral from defendants to "secure [NAS] against Payment Bond claims which have been denied but are not yet resolved, plus a Performance Bond claim by Paterson Public Schools on its Performance Bond No. 2207495, which has been denied by NAS, but which has not yet been resolved, and loss adjustment expenses incurred in connection therewith and in connection with this action." (Moving Br. 12.) As discussed further *infra*, it is unclear whether this collateral demand is part of the relief sought on counts I and II. NAS makes no arguments expressly directed to counts III or IV, and their status is unclear.

Defendants oppose only one aspect of the motion: the attorneys' fees and expenses sought. (*See* D.E. 45, Opp. Br.) They admit the vast majority of the facts alleged by NAS (*see* D.E. 45-1, Defs.' R. 56.1 Response); they do not contest that they are liable to reimburse NAS under the Agreement for its payouts under the bonds; and they do not object to the principal amount NAS seeks or to its demand for collateral. Their argument, instead, is that NAS is not entitled to summary judgment on count II because it has not yet prevailed in the litigation and has not shown why, under New Jersey law, the fees requested are reasonable. In so arguing, they

5

do not challenge the amount of the fees NAS has sought, but rather its entitlement to recover them at all at this stage.[5]

## III. Standard of Review

Summary judgment is proper where the movant demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). As the text of the rule makes clear, it is the moving party's burden to show that no genuine dispute of material fact exists. *Hartford Cas. Ins. Co. v. Peerless Ins. Co.*, 2016 WL 5723659, at *4 (D.N.J. Sept. 30, 2016) (McNulty, J.) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). A factual dispute is "genuine" if a reasonable jury could find for the nonmovant, and it is "material" if it would affect the outcome of the action under the governing law. *United States v. $7,599,358.09*, 953 F. Supp. 2d 549, 554 (D.N.J. 2013) (Chesler, J.) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

If the moving party has the burden of proof at trial, it must "'show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party.'" *Id.* Even where a motion seeking summary judgment is unopposed, it will not automatically be granted; the movant must still establish its entitlement to relief within the framework of Rule 56. *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990) ("Where the moving party has the burden of proof on the relevant issues, this means that the district court must determine that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law.")

---

[5] Defendants contend that NAS has not sought summary judgment on counts III through V. Although the status of counts III and IV is indeed unclear, count V was dismissed by stipulation of the parties, as noted earlier.

If the movant makes such a showing, to withstand summary judgment the non-movant "'must present sufficient evidence to allow a reasonable jury to find in its favor.'" *Cont'l Cas. Co. v. Fleming Steel Co.*, 439 F. App'x 134, 136 (3d Cir. 2011) (quoting *G–I Holdings Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 253 (3d Cir. 2009)). It is insufficient to "'simply show that there is some metaphysical doubt as to material facts.'" *Hartford*, 2016 WL 5723659, at *4 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

In deciding the motion, the Court views the evidence and takes the inferences to be drawn from it in the light most favorable to the non-movant. *G–I Holdings*, 586 F.3d at 253. The Court does not weigh evidence or make credibility determinations at the summary judgment stage. *Hartford*, 2016 WL 5723659, at *5.

## IV. Discussion

### A. Counts I and II

NAS's motion for summary judgment is directed principally to seeking recovery of the amounts it paid out under the bonds and its associated loss adjustment expenses, including attorneys' fees. These amounts are the subject of counts I and II of the complaint, which seek contractual indemnification under the Agreement. Indemnity agreements, such as the one between NAS and the indemnitors here, "'are interpreted in accordance with general principles of contract law.'" *Selective Ins. Co. of Am. v. Titsworth*, 2021 WL 3930715, at *3 (Sept. 1, 2021) (Salas, J.) (quoting *IFC, Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 317 (3d Cir. 2006)). If unambiguous, the language is enforced as written. *Id.* (citing *Cnty. of Morris v. Fauver*, 153 N.J. 80, 103 (1998); *Kampf v. Franklin Life Ins. Co.*, 33 N.J. 36, 43 (N.J. 1960)).[6] "'[S]ummary resolution of indemnity disputes with unambiguous contractual

---

[6] Both parties apply New Jersey law, and the Court does likewise.

7

provisions is appropriate.'" *Id.* (quoting *Centennial Ins. Co. v. Horizon Contracting Co.*, 2008 WL 4791657, at *6 (D.N.J. Oct. 31, 2008)).

Here, the fact of defendants' liability to NAS for amounts it paid out under the payment and performance bonds is clear and undisputed. Defendants do not dispute that they signed the Agreement and are bound by it, jointly and severally. (NAS SUMF ¶¶ 2-3, 7; Defs.' R. 56.1 Response ¶¶ 2-3, 7.) The Agreement provides in unambiguous terms that defendants are required to "exonerate, hold harmless and indemnify" NAS "from and against any and all Loss," and "Loss" includes "any liability, loss, costs, damages, attorneys' fees, consultants' fees, and other expenses, including interest," that NAS sustains as a consequence of the bonds. (Agreement ¶ 2.) It further includes amounts paid in investigating and settling claims, seeking releases from liability, defending lawsuits, paying judgments, enforcing the Agreement, performing obligations under a bonded contract, and seeking recovery of expenses, and "expressly includes attorney fees incurred in defending claims, . . . evaluating, settling, and paying claims, [and] seeking recovery under the terms of this Agreement from the Indemnitors . . . ." (*Id.*)

Through the Colville Affidavit and the documents accompanying it – which include pleadings, settlement agreements and releases, check copies, and email correspondence – NAS has set forth in detail how the amounts it paid to each supplier or contractor under the bonds pursuant to the individual settlements fall within the categories delineated by the Agreement as qualifying "losses." The Agreement unambiguously provides that NAS is "entitled to immediate reimbursement for any and all Loss," and that "[a]n itemized statement of payments made by [NAS] sworn to by an officer of [NAS] shall be *prima facie* evidence of the liability of the Indemnitors to reimburse [NAS]." (Agreement ¶ 9.) *Prima facie* evidence clauses such as this

8

one are enforceable and "shift[] the burden to the non-movant to show that a rational factfinder could determine that liability has not attached." *Centennial*, 2008 WL 4791657, at *9. As noted, NAS has supplied ample evidence that it made payments under the bonds. Defendants admit that these payments were made (Defs.' R. 56.1 Response ¶ 87), and they offer no rebuttal of NAS's *prima facie* showing. Quite simply, defendants do not contest their liability under the Agreement with respect to NAS's payouts under the bonds, and summary judgment is appropriate on count I as to that liability. *Accord Centennial*, 2008 WL 4791657, at *9 (because indemnitors did not contest liability under a bond, and in view of evidence submitted in support of motion, summary judgment as to liability was appropriate).

Notwithstanding NAS's entitlement to recover from defendants, it has not established on this record that it is entitled to summary judgment in the specific *amount* of damages it seeks in count I. NAS contends that it is entitled to $1,896,757.69 (minus funds it has already recovered in the amount of $387,841.92 (Colville Aff. ¶ 104; NAS SUMF ¶ 94), summarizing the itemized amounts in a table that appears in both the Colville Affidavit and the statement of material facts. (NAS SUMF ¶ 87 (citing Colville Aff. ¶ 95).) However, the sum of the amounts listed is $1,904,957.49, not $1,896,757.69. As a movant seeking judgment on its affirmative claims, it is NAS's obligation to clarify the discrepancy before judgment can be entered in its favor.[7]

In count II, NAS seeks to recover its loss adjustment expenses, which are comprised of consultant fees and attorneys' fees, costs, and expenses. It supports that request with invoices

---

[7] The record reflects inconsistent figures for the payments NAS made to Chappelle Mechanical Inc. for the Bound Brook project (*compare* Colville Aff. ¶¶ 29-31 & Ex. 7, 29 *with id.* ¶ 95; *see also* NAS SUMF ¶¶ 25-28, 87); to Allied Building Products Corp. for the Bound Brook project (*see* Colville Aff. ¶¶ 27-28, 95 & Ex. 6, 29; NAS SUMF ¶¶ 24, 87); and to The Garland Company for the Riverdale project (*see* NAS SUMF ¶¶ 78-80; Colville Aff. ¶¶ 84-85 & Ex. 25, 29). Whether one or more of these errors gives rise to the discrepancy is for NAS to determine and correct in any resubmission.

from the consultant, Alliance Consulting Group, LLC, and from its law firm, Gottesman, Wolgel, Flynn & Weinberg, P.C. (*See* NAS SUMF ¶ 93; Colville Aff. ¶¶107-112 & Ex. 32; Licker Aff. 21-26 & Ex. 36.)[8] Consultant fees, attorneys' fees, and other expenses sustained or incurred due to the execution of the bonds (including, as noted above, such fees and expenses sustained in investigating and settling claims, prosecuting suits, enforcing the Agreement, and attempting to recover losses), are all expressly within the Agreement's definition of "Loss" for which defendants are obligated to indemnify NAS. (Agreement ¶ 2.) The contents of the invoices, including the descriptions of the work performed, and related expense documentation demonstrate that what NAS seeks qualifies for indemnification under the Agreement.[9] As with the amount sought in count I, however, clarification is needed as to the dollar figure NAS seeks to reduce to judgment for consultant and attorneys' fees and expenses; NAS purports to seek "over" $199,727.91 and says it will "continue to incur" such expenses. (NAS SUMF ¶ 93; *see also* Colville Aff. ¶ 113 (stating that defendants are obligated to indemnify NAS in amount of $199,727.91 "plus . . . future fees and expenses").) The Court cannot reduce to judgment an unspecified amount. NAS must clarify the sum it seeks, supported by appropriate itemization, before judgment may enter in its favor.

Addressing defendants' arguments against the entry of summary judgment on count II – that NAS has not yet prevailed or demonstrated that the fees are reasonable – the Court notes that the parties contracted to displace common law principles of attorney fee recovery with the indemnity language in paragraph 2 of the Agreement. (*See* Agreement ¶ 2.) They are permitted

---

[8] The Licker affirmation (¶ 21) states that the firm's invoices are at Exhibit 35. That exhibit is the discovery confidentiality order; the invoices appear in Exhibit 36.
[9] The consultant invoices show that Alliance was performing work for NAS and that the work falls within the parameters of what is subject to indemnification under the Agreement, and the Court rejects defendants' argument to the contrary. (*See* Opp. Br. 3.)

10

to make this choice. *Centennial*, 2008 WL 4791657, at *9; *see also Selective*, 2021 WL 3930715, at *3-5, 7. As with the principal amount sought, "[a]n itemized statement of payments made by [NAS] sworn to be an officer of [NAS] shall be prima facie evidence of the liability of the Indemnitors to reimburse [NAS]." (*Id.* ¶ 9.)  Once NAS made that showing, it became incumbent on defendants "to show that a rational fact-finder could determine that [NAS] is not entitled to the amount it claims." *Selective*, 2021 WL 3930715, at *7.  Instead of doing so, defendants point to factors that the New Jersey Rules of Professional Conduct examine as part of a general reasonableness analysis and argue that NAS has not shown how those factors favor it here.  They do not, however, mount any challenge to the specific amounts in NAS's affidavits or backup.  This is insufficient. *Accord id.*, 2021 WL 3930715, at *7 (although burden had shifted to defendants to show rational factfinder could conclude plaintiff not entitled to claimed amounts, they "have not attempted to do so . . . other than arguing that [p]laintiff has not proved the reasonableness of the fees, [d]efendants have not made any factual challenge to the amounts requested").

The Court also rejects defendants' argument that it should deny NAS's fee request because the *prima facie* evidence clause that it is based on "does not limit the payment to 'Losses' under the Agreement" and "provides no limitation whatsoever." (Opp. Br. 4 (also claiming that defendants "did not agree to pay any payment made by NAS to any person for any reason merely on the showing of a sworn statement").)  The relevant paragraph, read as a whole, shows this is not what NAS is seeking:

> 9. <u>Claim Settlement:</u> The Surety shall have the right to decide and determine in its sole discretion whether any claim, liability, suit or judgment made or brought against the Surety or any of the Indemnitors on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and the Surety's decision shall be final, binding and conclusive upon the Indemnitors. **The Surety shall be entitled to immediate reimbursement for any and all Loss under this**

11

> **Agreement.** The Surety shall have no obligation to tender its defense to any Indemnitor. If the Surety elects not to tender its defense to any Indemnitor, then the Indemnitors shall nevertheless remain liable to the Surety for all Loss. **An itemized statement of payments made by the Surety sworn to by an officer of the Surety shall be prima facie evidence of the liability of the Indemnitors to reimburse the Surety.**

(Agreement ¶ 9 (emphases added).) The commonsense reading is that NAS is entitled to be reimbursed for "Loss," a term defined in paragraph 2, and that the mechanism for that reimbursement (again, of "Loss"—no more) is the provision of an itemized statement of the payments, sworn to by an NAS officer. That is what NAS has done, and summary judgment in favor of NAS on liability as to count II is appropriate.

In sum, NAS is entitled to summary judgment on liability for counts I and II, but determination of the amount to which it is entitled on those counts must await a sufficient factual showing.

### B. Counts III and IV and Demand for Collateral

NAS does not address either count III, for exoneration, or count IV, for subrogation, in its summary judgment motion. Nor, however, has it explicitly stated that it is no longer pursuing those claims. (*See* Moving Br. 1 (seeking summary judgment on "all counts" of complaint).) In their opposition, defendants point out that NAS was not seeking summary judgment on these claims, but NAS's reply remains silent on them.

Upon review of the complaint's pleading of counts III and IV and the prayer for relief on those counts (*see* Compl. ¶¶ 23-31 & 11 ¶¶ 3-4), the Court observes that the relief sought appears largely duplicative of what NAS seeks by way of contractual indemnification in counts I and II. Count III does, however, specifically highlight an outstanding obligation or claim under performance bond number 2207495. NAS must clarify whether it seeks judgment on this claim, including the scope of any relief sought and how that relief would not be duplicative of counts I

12

and II.  Similarly, count IV purports to seek reimbursement for payments NAS made pursuant to the bonds and its associated loss adjustment expenses.  (*See* Compl. 11 ¶ 4.)  It is unclear what additional relief NAS seeks to obtain by invoking subrogation.

Finally, NAS demands that defendants post collateral in the amount of $366,544.97 to secure it against bond claims that have been denied but that remain unresolved, "plus a Performance Bond claim by Paterson Public Schools on its Performance Bond No. 2207495, which has been denied by NAS, but which has not yet been resolved, and loss adjustment expenses incurred in connection therewith and in connection with this action."  (Moving Br. 12.)  The Agreement does indeed permit NAS to demand collateral (Agreement ¶ 3), and such provisions are enforceable.  *See Guarantee Co. of N. Am. USA v. SBN Enterprises, Inc.*, 2011 WL 3205318, at *3-4 (D.N.J. July 27, 2011) (Pisano, J.).  But it is unclear what bond claims, besides the one specifically cited in the brief, remain unresolved.[10]  It is also unclear what count of the complaint this request is tethered to; as noted above, count III specifically mentions a claim on the performance bond for the Paterson project, but whether NAS is seeking relief on that count is not apparent from the record.  Neither count I nor count II included any request for collateral.  *See N. Am. Specialty Ins. v. Cardinal Contr. Co., LLC*, Civ. Action No. 20-17094, at 12 (D.N.J. June 29, 2022) (Shipp, J.) ("Collateral for surety bonds is distinguishable from an award of indemnification; collateral, based on reserves set up relating to certain bonds, is intended to protect the surety from future liability and anticipated losses rather than claims that have already been asserted." (quoting *Guarantee Co.*, 2011 WL 3205318, at *4).)  The only

---

[10] The support for the current collateral demand is a May 2018 demand letter that seeks $316,544.97, not $366,544.97.  (Colville Aff., Ex. 30.)  The principal amount of bond losses also varies from that letter to the complaint to the present motion, suggesting that claims were settled during that time; it is not clear, therefore, that the outstanding claims supporting the collateral demand in the 2018 letter are the same ones supporting the current demand.

count expressly seeking equitable relief – count V – was dismissed on the parties' request. Therefore, while it appears NAS may be entitled to its collateral demand, it must supply an appropriate legal and factual basis for the Court to grant summary judgment in its favor with respect to this demand. Because it has not done so on the present record, its collateral demand is denied without prejudice.

**V.      Conclusion**

NAS's motion for summary judgment is granted as to liability on counts I and II and is otherwise denied without prejudice. The parties are directed to appear before Magistrate Judge Waldor on a date to be set for directions on an appropriate schedule and procedure for corrected and/or clarifying submissions that address the issues identified herein. An appropriate order will issue.

|  |  |
|---|---|
| Date: December 30, 2022 | /s/ Katharine S. Hayden<br>Katharine S. Hayden, U.S.D.J. |